WILLIAMS, appellant, and WINANS and others, respondents.

1. M. M. W. brought an action at law against J. T. W. The parties submitted the matters in difference in that suit to arbitration. Their agreement of submission contained the following stipulations : " In case the said arbitrators award that the said J. T. W. pay any amount to the said M. M. W., the said J. T. W. agrees to make and execute his bond to the said M. M. W. in the penal sum of double the amount so awarded to be paid to the said M. M. W. by the said J. T. W., conditioned to pay the amount of such award in instalments of one-fifth of the said amount each, as follows : one-fifth thereof in cash, and the balance in yearly instalments of one-fifth each, with interest on the same at seven per cent. per annum, payable half-yearly ; and if any instalment shall remain unpaid for the space of ten days after the same may become due, then the whole amount remaining unpaid to become due and payable at the option of the said M. M. W. And the said parties do agree, that in case the said J. T. W. shall not, within thirty days after the said award shall be made, pay one-fifth of the said amount so awarded, and execute and deliver the bond in manner and form as above mentioned, and execute and deliver to the said M. M. W. a mortgage on the one hundred acres of land opposite his house to secure the payment of the same, or pay the amount of the said award, less $500, then this submission may be made a rule of the Supreme Court of the state of New Jersey, upon the application of either party." The arbitrators awarded that J. T. W. should pay M. M. W. the sum of $5853.70. *Held,* that by this agreement J. T. W. was bound either to pay down the whole amount awarded, less $500, or to pay one-fifth of the amount awarded in cash, and secure the balance by bond and mortgage, in thirty days after the date of the award.

2. M. M. W. filed a bill against J. T. W. and certain alleged fraudulent encumbrancers and grantees, praying that J. T. W. might be specifically decreed to perform his agreement, and that the alleged fraudulent mortgages and conveyances might be declared fraudulent and void as against the plaintiff. After answer and replication, a supplemental bill, or bill in the nature of a supplemental bill, was filed against the original defendants and one D. C., in which it was charged that the original defendants, or some of them, procured a sheriff's sale of the said property on certain paid judgments against J. T. W., with intent to defraud the plaintiff of his rights under the award ; and the prayer of the bill was that the sheriff's deed to D. C. might be decreed to be fraudulent and void. *Held,* that inasmuch as it was alleged that D. C. was only the trustee of a naked trust, and that the property was bought at the sheriff's sale by the original defendants, or some of them, in the name of D. C., to enable them the more effectually to accomplish the original fraudulent design, the plaintiff could maintain his supplemental bill.

3. The defendants who answered the original bill having in their answers specifically alleged a want of equity in the plaintiff's case: *Held*, that it was proper to consider and decide on demurrer to the supplemental bill the question thus raised.

The opinion of the Chancellor is reported in 5 *C. E. Green* 393.

*Mr. F. B. Chetwood* and *Mr. B. Williamson*, for appellant.

*Mr. R. S. Green* and *Mr. C. Parker*, for respondents.

The opinion of the court was delivered by

DALRIMPLE, J.

The questions at issue in this case arise upon demurrer to plaintiff's supplemental bill.

The facts of the case, so far as necessary to a proper understanding of the points involved are, that the plaintiff, in or about the year 1867, brought suit against John T. Winans, in the Supreme Court of this state, upon a money demand. On the 2d day of April, 1867, the parties to that suit submitted the matters in difference therein to arbitration. In the agreement of submission are the following clauses or stipulations:  " In case the said arbitrators award that the said John T. Winans pay any amount to the said Michael M. Williams, the said John T. Winans agrees to make and execute his bond to the said Michael M. Williams in the penal sum of double the amount so awarded to be paid to the said Williams by the said John T. Winans, conditioned to pay the amount of such award in instalments of one-fifth of the said amount each, as follows : one-fifth thereof in cash, and the balance in yearly instalments of one-fifth each, with interest on the same at seven per cent. per annum, payable half-yearly ; and if any instalment shall remain unpaid for the space of ten days after the same may become due, then the whole amount remaining unpaid to become due and payable at the option of the said Williams.    And the said parties do agree that in case the said John T. Winans shall not, within thirty days after the said award

shall be made, pay one-fifth of the said amount so awarded, and execute and deliver the bond in manner and form as above mentioned, and execute and deliver to the said Williams a mortgage on the one hundred acres of land opposite his house to secure the payment of the same, or pay the amount of the said award, less five hundred dollars, then this submission may be made a rule of the Supreme Court of the state of New Jersey, upon the application of either party."

On the 31st of December, 1867, the arbitrators awarded that John T. Winans should pay the plaintiff the sum of $5853.70. Very shortly after the making of this award, Winans, as charged by the plaintiff, encumbered and conveyed the lands mentioned in the agreement of submission, with intent to defraud the plaintiff of the mortgage to which by the agreement of submission he was entitled. On the 10th of February, 1868, plaintiff filed his bill against John T. Winans and the alleged fraudulent encumbrancers and grantees, praying that Winans may be specifically decreed to perform his agreement and execute a mortgage on the one hundred acres of land, and that the mortgages and conveyances, made with the intent aforesaid, may be declared fraudulent as against the plaintiff. All the defendants, except one, answered. The answers insist that by the agreement of submission the plaintiff is not entitled to a mortgage, and pray the same benefit of this defence as if the defendants had demurred to the bill for want of equity. The plaintiff filed a replication to the answer, and took a decree *pro confesso* against the defendant who had not answered.

Afterwards, on the 23d of November, 1868, the plaintiff filed a supplemental bill against all the defendants and one David Cutter, in which it is charged, in substance, that on or about the 15th of October, 1868, the defendants in the original bill, or some of them, by virtue of two judgments against John T. Winans, one of which was recovered prior to the date of the said agreement of submission, and the other

subsequent thereto, but before the award of submission, procured a sheriff's sale of the said lands, with intent to defraud the plaintiff of his rights under said award.

The supplemental bill further alleges that the judgments had been paid before the sheriff's sale, and that the defendants in the original bill, or some of them, had at the sheriff's sale bought the property in the name of Cutter, but without his knowledge or consent, and that he, though holding the legal title to the property, did not claim any beneficial interest therein, but was only the trustee of a naked trust, created by the original defendants, or some of them, to enable them the more effectually to accomplish the original fraudulent design, which was to hinder, delay, and defeat the plaintiff in the enforcement of his award. The bill prays an answer to the matters therein set up, and that the sheriff's deed to Cutter may be decreed to be fraudulent and void, and set aside; or, if more equitable, that the said David Cutter may be declared to be a trustee, holding the sheriff's deed and the title to the lands thereby conveyed for the benefit of the plaintiff to secure his rights under the agreement and award. The defendants insist that these new facts are not the subject matter of a supplemental bill, but make a case inconsistent with that set up by the original bill. The argument is that the judgments being prior in point of time to the award a sale under them would give a title paramount to that of Winans as it existed at the date of the award, and would consequently overthrow and render of no avail the encumbrances and conveyances made and given by Winans subsequent to the award. In other words, that the proceedings under the judgments are necessarily hostile to, and overthrow the deeds and mortgages which are in controversy in the original suit; and that Cutter, who has been invested with the legal title, free and clear of the fraudulent conveyances in question, cannot be brought in by supplemental bill, because he is in no wise concerned in the matters litigated in the original bill, and is not bound by the answers and proceedings therein.

It is apparent that the plaintiff's original suit, if he should succeed therein, will be fruitless, unless Cutter is made a party defendant. On the other hand, if the plaintiff should now discontinue or suspend proceedings in his original suit, and proceed in a separate suit against Cutter, and succeed, he would be compelled to re-commence the old controversy, in order to obtain adequate relief. If in a suit against Cutter the sheriff's deed should be declared fraudulent and void, and set aside, the plaintiff would stand precisely where he did when he commenced the first suit. The plaintiff's remedy must, therefore, be incomplete until he can litigate as well with Cutter as with the original defendants. The question to be decided is whether such litigation must embrace two separate suits, or may be carried on under the original and supplemental bills now on file. In the case of *Decker* v. *Caskey, Saxt.* 433, Chief Justice Ewing, sitting for the Chancellor, says : " It is the desire, as well as the duty of this court, never to do justice by halves—never merely to beget business for another court—and never, when a case is fairly within its jurisdiction, to leave open the door for litigation further, or in any other place, if it can possibly be here closed." See also, on this point, *Shannon* v. *Marselis, Saxt.* 424.

It is the duty of the court to settle and determine if practicable, in one suit, the rights in and to the hundred acres of land in question of the plaintiff and defendants in the original suit. It is immaterial whether the defendants claim a legal or equitable estate. The rule above referred to is not relaxed because the defendants may claim a trust estate, while the legal title stands for their use and benefit in the name of another. I presume it will be admitted, that if the plaintiff could maintain an original bill against the defendants and Cutter jointly, Cutter may now be brought in by supplemental bill; and I think it equally clear, that if it had appeared that Cutter's title, derived from the sheriff's sale, was really adverse to the title of the other defendants, and that he claimed in fact, as well as by appearance, in hostility

to them, he could neither be brought into this suit by supplemental bill, nor joined with the other defendants in an original bill. In that case their rights would be separate and distinct, proceeding from different sources, and not dependent upon or connected with each other, and the defendants in the original bill could have no interest in Cutter's title, but would be interested to defeat and overthrow it. A bill filed against them all, would therefore be open to the objection of multifariousness. But in this case it is alleged that Cutter claims nothing beyond a naked trust, and that the original defendants, or some of them, concocted the sheriff's sale and purchased the property, and took a deed therefor in the name of Cutter, without even his knowledge or consent. The plaintiff's case as made by the original and supplemental bill is, in short, that the defendants in interest undertook first to defeat plaintiff by means of the fraudulent encumbrances and conveyances stated and brought in question in the original bill; and pending the suit brought by the plaintiff for relief against these encumbrances and conveyances, the defendants, in order more surely to effect their purpose and increase the embarrassments of the plaintiff, procured, by fraud, a sheriff's sale of the property, and thereby shifted the legal title from themselves to Cutter, who holds the same for the sole use and benefit of the other defendants.

If, in order to give the plaintiff full relief, Cutter is a necessary party, and has, as the mere agent or trustee of the parties with whom the plaintiff is already litigating, acquired title to the property in controversy pending the suit, he may be brought in and proceeded against by supplemental bill. It is true that he is not, technically, the assignee of the rights of the other defendants which were at first the subject matter of litigation. The real defendants have made no formal assignment, but merely changed their ground, and thus the case has been made to assume a new phase. Cutter, without any real interest, is now the central figure. The original defendants have, since the filing of the first bill, taken a new proceeding, by which they claim that their

original rights have been suspended, and their title changed. The plaintiff contends that the new, like the old title, is tainted with fraud. I do not think that the fact that the defendants have caused the conveyance by the sheriff to be made to Cutter, and not to themselves directly, under the circumstances, changes the rights of the parties or necessitates a new suit. I hold that the plaintiff may proceed against Cutter and the other defendants, and have the benefit of the original suit, not by strict supplemental bill, but by original bill in the nature of a supplemental bill. The bill demurred to is original as to Cutter, and as to the new facts alleged. It is supplemental because the matters sought to be put in controversy have arisen *pendent lite*, whereby to prevent an undue multiplicity of suits, and give the plaintiff full relief, it has become necessary to allege such newly arisen matters and bring in Cutter who is nominally connected therewith. If the original defendants had taken the sheriff's deed to themselves directly, I think it must be admitted that a supplemental bill could have been maintained against them. That they have chosen to cover up their tracks so far as possible by having the title made to a trustee, cannot subject the plaintiff to the expense of two separate suits. The principles of equity pleading and practice applicable to, and by which this case must be governed, will be found in the following extracts from *Story's Eq. Pl.*, §§ 335–36 : " If," says the learned author, " new charges are required to be made in order to obtain a further discovery, or a material fact is required to be put in issue, which was not in the cause before, such as a charge of fraud or a new title, the object cannot be obtained but by a supplemental bill. So new parties, when necessary, may be added by a supplemental bill where the proceedings are in a state in which the object cannot be obtained in any other way. In the next place, when new events or new matters have occurred since the filing of the bill, a supplemental bill is, in many cases, the proper mode of bringing them before the court; for, generally such facts cannot be introduced by way

of amendment to the bill. But here we are to understand that such new events, or new matters, do not change the rights or interests of the parties before the court, (for then, properly speaking, the bill is not simply a supplemental bill) but they merely refer to and support the rights and interests already in the bill. A supplemental bill may also be brought, not only to insist upon the relief already prayed for in the original bill, but upon other relief, where facts which have since occurred may require it." I do not think it necessary to attempt a discussion of the numerous adjudged cases relating to the point under consideration. Most, if not all of them, will be found in the notes to sections 332 to 352, of the work referred to, where the subject is discussed with the author's usual learning and ability. He says, in section 345, that the prominent distinction between supplemental bills, correctly speaking, and original bills in the nature of supplemental bills, is that a supplemental bill is properly applicable to those cases only where the same parties or the same interests remain before the court; whereas, an original bill in the nature of a supplemental bill, is properly applicable when new parties, with new interests, arising from events since the institution of the suit, are brought before the court. Keeping in mind this distinction, and the fact that the interest of the original defendants in the property in controversy has not ceased, but that they have only acquired means to hold the same additional to their original title; and further, that the litigation is still substantially between the original parties, I think the conclusion to which the court has arrived, that the plaintiff is entitled to his supplemental bill, will be found to be correct.

The defendants further insist that the demurrers must be sustained, because the plaintiff on the face of his bill shows no good claim to equitable relief. Their allegation is, that the agreement of submission does not give the plaintiff the right to a mortgage, except at the option of Winans, and, having no lien upon the land, the plaintiff stands simply in the position of a creditor at large. Though the plaintiff

holds the award of the arbitrators in his favor, and that may be considered as the judgment of a tribunal of the parties' own choice, yet the plaintiff, not having exhausted his remedy at law, cannot stand upon his award alone and ask a court of equity to enforce it. *Edgar* v. *Clevenger,* 1 *Green's Ch.* 258; *Green* v. *Tantum,* 4 *C. E. Green* 107; *S. C.,* on appeal, 6 *C. E. Green* 364. If, therefore, the plaintiff has not, in his agreement of submission, a covenant on the part of John T. Winans to secure the amount awarded by a mortgage, neither the original nor supplemental bill can be maintained. This point does not seem to have been raised in the court below, as no allusion is made to it in the opinion of the Chancellor. I think, however, the question now fairly arises and ought to be decided, because there would be no propriety in sending the parties back to the Court of Chancery to try the question of fraud, if the plaintiff, if successful in that issue, must, nevertheless, eventually fail because he has no standing in court. The demurrers are to the supplemental bill only. They cannot be made to reach the original bill, which has been answered. But the plaintiff's want of equity, as shown by his original bill, was alleged by the defendants who answered. The objection having been specifically taken, and the ground of it appearing on the plaintiff's bill, I do not see how we can avoid meeting and disposing of it.

Looking to the mere letter of the agreement, and reading each sentence by itself, the defendants' construction of it is correct. But reading it as a whole, I think the context shows that the intention of the parties was that Winans should be bound to pay one-fifth of the amount of the award in cash, and secure the balance by bond and mortgage, in thirty days after the date of the award, having the option to pay down the whole amount, less five hundred dollars, which the plaintiff was then to abate. There is a stipulation superadded, that in case Winans failed to fulfill his agreement or pay the whole amount after the abatement of five hundred dollars, the agreement of submission might be made a rule of court.

The defendants' construction of the agreement is that Winans only agreed to pay one-fifth of the amount awarded, and give bond for the balance with the privilege of securing the bond by mortgage, or paying down the whole amount, less the five hundred dollars, and thereby preventing the submission being made a rule of court. This construction would render the rule of court entirely useless. Winans could only be punished by the court for violation of his agreement. The agreement would be fully performed by payment of one-fifth of the amount awarded, and execution and delivery of an unsecured bond for the balance. The result would be that the plaintiff, a creditor of Winans to near $6000, after giving up his pending suit, and incurring the expenses of an arbitration, would, in the end, collect only one-fifth of the amount due him, and be obliged to accept Winans' bond for the balance, payable in four equal annual instalments. If the submission should then be made a rule of court, it would be after all covenants had been performed on the part of Winans. The non-payment of his bond could hardly be held a contempt of court. If he was by his agreement only bound to give the bond, the court could only require him to do that much. It could not go further, and require him, under pain of being considered in contempt, to pay his bond. I think it is not going too far to hold that it is fairly to be inferred from the terms of the contract that it was within the contemplation of the parties that Winans should be bound to give a mortgage, as well as bond. If not, why did the parties agree that, on failure to give the mortgage, the submission should be made a rule of court, unless the whole amount, less the five hundred dollars to be abated, was paid down? They must have been under the erroneous impression that after the execution and delivery of the bond, the court could, for breach of the conditions, punish as for a contempt; or that Winans, having agreed to give the mortgage, might be proceeded against for his breach of agreement in the court of which the submission was a rule, or otherwise. The meaning which the defendants

would attach to the agreement, stands upon the letter alone. It is unreasonable, and not in accordance with what it is evident the parties designed to accomplish : that was to end the pending litigation in court, and transfer it to a tribunal of their own choice; the plaintiff agreeing to give Winans day of payment for four-fifths of the amount which might be awarded him ; Winans, on his part, to bind himself to pay in cash one-fifth of the award within thirty days, and to secure the balance by bond and mortgage, with the option to satisfy the whole award by paying down the amount awarded, less $500. It is admitted that we are compelled to arrive at the conclusion that the plaintiff is entitled to a mortgage by construction, and that there is some ambiguity in the terms of the agreement in this respect; yet there is no doubt, either as to the parties to the agreement, the amount due the plaintiff, or the lands referred to. I cannot see why the plaintiff is not entitled to the benefit of his agreement, if we believe that, by a fair construction of it, he is entitled to a mortgage. We cannot say that this contract cannot be understood, nor that it is incapable of any certain construction.

The conclusion being that the plaintiff is entitled to a mortgage, and that the supplemental suit is well brought, the decree below must be reversed and a decree entered overruling the demurrers.

The whole court concurred.